IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

J.H. WELCH                                                                                         PLAINTIFF

v.                                         NO. 4:10CV02005 HDY

MICHAEL J. ASTRUE,                                                                        DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. In December of 2007, plaintiff J.H. Welch ("Welch") commenced the administrative portion of this case by filing an application for supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His application was denied initially and upon reconsideration, after which he requested, and eventually received, a de novo hearing before an Administrative Law Judge ("ALJ"). In August of 2009, the ALJ issued a decision adverse to Welch, and he appealed. The Appeals Council subsequently denied Welch's request for review, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Welch then commenced the judicial portion of this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires a more scrutinizing analysis than mere substantial evidence. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009). The appropriate standard of review requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Id.

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, he found that Welch has not engaged in substantial gainful activity since December 31, 2007, that being, the day he filed the application at bar. At step two, the ALJ found that Welch has the following severe impairments: "chronic lower back pain, chronic left shoulder pain, hypertension, psychosis, malingering, and alcohol abuse." See Transcript at 16. At step three, the ALJ made the following findings as to whether Welch's impairments or combination of impairments meet or equal a listed impairment:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the listings 12.03 or 12.09 in 20 CFR Part 404, Subpart P, Appendix 1 ... However, after careful consideration of the entire record, the undersigned finds that when the claimant's substance abuse disorder is considered in addition to his other impairments, the claimant has marked limitations maintaining attention and concentration; relating adequately to supervisors or coworkers; tolerating stress and responding adequately to routine changes in a work setting; and understanding, remembering, and carrying out even simple job instructions.
>
> ...
> If the claimant stopped abusing alcohol, the remaining limitations would

> cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.
>
> …
>
> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CRF Part 404, Subpart P, Appendix 1 …

See Transcript at 18-19. The ALJ then assessed Welch's residual functional capacity and found that he is capable of performing light work except that he is limited to "performing a job with a sit/stand option and no overhead work with his left upper extremity." See Transcript at 21. The ALJ additionally found that Welch is limited to "performing unskilled work which is defined as simple work in a low stress environment, where interpersonal contact is incidental to the work performed, and the complexity of one to two step tasks is learned and performed by rote, with few variables and little judgment." See Transcript at 21. At step four, the ALJ found that Welch has no past relevant work. At step five, the ALJ found that considering Welch's residual functional capacity, age, and education in conjunction with the testimony of a vocational expert, jobs exist in significant numbers in the national economy that Welch can perform.[1] Accordingly, the ALJ found that Welch has not been under a disability as defined by the Act since December 31, 2007, the day he filed his application.

---

[1] The vocational expert testified, and the ALJ found, that a hypothetical individual with Welch's residual functional capacity, age, and education can work as a hand packer.

WELCH'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Welch thinks not and advances the following reasons why: (1) the ALJ erred at step two because Welch is not malingering, (2) the ALJ erred at step three because Welch's lower back and left shoulder problems were not considered in combination with his other impairments, (3) Welch's subjective complaints of pain were not properly considered, and (4) his mental and emotional impairments were not properly considered.

MALINGERING. Welch first maintains that the ALJ erred at step two. Welch specifically maintains that he is not malingering and the ALJ erred in so finding.[2]

At step two, the ALJ is obligated to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "'more than a minimal effect on the claimant's ability to work.'" See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [quoting Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)]. The determination at step two is strictly a medical determination. See Bowen v. Yuckert, 482 U.S. 137 (1987).

---

[2]

Welch maintains the following in support of his assertion:

The term malingering came from the Consultative Examination conducted by William B. Little, Ph.D. on February 1, 2008. .. It implies that a true mental evaluation could not be conducted due to Plaintiff's malingering. … Yet another mental evaluation conducted by his provider, Little Rock Community Mental Health Center on March 22, 2009, ruled out any malingering. … A provider's opinion addressing a physical limitation of a claimant is entitled to substantial weight. … According to 20 C.F.R. 404.1527(d)(2), the ALJ must "give good reasons" for the limited weight given the opinion of Plaintiff's medical provider. This was not done in this case.

See Document 16 at 4-5.

At step two, the ALJ identified one of Welch's severe impairments as "malingering." As to that finding, the ALJ noted the following:

> In February 2008, Dr. William Little, a certified mental health examiner, evaluated the claimant at the request of the Social Security Administration. ... Dr. Little wrote that the claimant was manipulative and malingered throughout the evaluation. He noted that the claimant was able to provide a detailed history about his medical condition and "deliberately exaggerated and malingered with no difficulty." ... He also opined that the claimant's behavior during the exam was basically manipulative and characterized by outrageous malingering. Dr. Little wrote that a conclusion could not be drawn regarding the claimant's mental status due to his malingering. He diagnosed the claimant was malingering and a possible anti-social personality disorder. He wrote that the claimant reported "no restrictions in day to day adaptive functioning from a mental health standpoint." ...
>
> In March 2009, Mr. Welch began receiving mental health treatment at the Little Rock Community Mental Health Center. Dr. Natalie Strode performed the initial evaluation of the claimant. ...
>
> In May 2009, Dr. Strode wrote that ... she needed to rule out malingering as a diagnosis due to the atypical pattern of symptoms presented by Mr. Welch. ... She diagnosed the claimant with a psychosis disorder NOS, rule[d] out bipolar disorder, alcohol abuse and rule[d] out malingering. ...

See Transcript at 17-18.[3]

---

[3]

The question of whether Welch is a malingerer arose again in the context of the ALJ's assessment of Welch's residual functional capacity. The ALJ addressed the question as follows:

> Dr. Little routinely indicated that the claimant was exaggerating his symptoms. He diagnosed the claimant with malingering. This diagnosis tends to diminish the claimant's credibility. Dr. Strode also mentioned in her treatment notes in May 2009 that she needed to rule out a diagnosis of malingering and wrote that she was concerned that the claimant might have a "secondary motivation such as disability."

See Transcript at 23.

Substantial evidence on the record as a whole supports the ALJ's finding that Welch is malingering.[4] Dr. William Little ("Little") performed a consultative mental evaluation of Welch in February of 2008 and found, in part, that he "malingered through[out] the exam[ination] and gave outrageous responses." See Transcript at 172. Although Welch maintains that Little's finding is in stark contrast to that made by Dr. Natalie Strode ("Strode"), a treating physician, and should not have been accorded any weight whatsoever, the record establishes otherwise.

Strode performed a consultative mental evaluation of Welch in March of 2009 and specifically ruled out malingering. See Transcript at 230. When she saw him two months later for a follow-up, though, she noted the following:

> At his initial appointment, I found him to be a diagnostic challenge as he reported a lifelong [history of] psychotic and possibly mood symptoms but the psychotic symptoms were atypical and he was actively engaged in EOH use which he denied was problematic. He also reported a long [history of] behaviors that made me suspect that a characterologic pathology was also contributing to his presentation. I felt that I also had to [rule out] malingering.

See Transcript at 223. Thus, by Strode's second examination of Welch, she had developed a suspicion that Welch was malingering, and it was not error for the ALJ to have relied upon Little's finding and Strode's suspicion that Welch is malingering.

---

[4] It is not clear why the ALJ identified "malingering" as one of Welch's severe impairments. The Court understands "malingering" to be the fabrication or exaggeration of symptoms of a mental or physical disorder, not a separate, identifiable impairment akin to a somatization or factitious disorder.

<u>WELCH'S LOWER BACK AND SHOULDER PROBLEMS</u>. Welch next maintains that the ALJ erred at step three. Welch specifically maintains that his lower back and shoulder problems were not considered in combination with his other impairments.

At step three, the ALJ must determine whether a claimant's impairments, when considered individually and in combination, meet or equal a listed impairment. See <u>Raney v. Barnhart</u>, 396 F.3d 1007 (8th Cir. 2005). In order to meet a listed impairment, the claimant's impairment must "meet <u>all</u> of the specified medical criteria." See <u>Marciniak v. Shalala</u>, 49 F.3d 1350, 1353 (8th Cir. 1995) [emphasis in original] [quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990)]. In order to equal a listed impairment, the claimant must "present medical findings equal in severity to <u>all</u> the criteria for the one most similar listed impairment." See <u>Id</u>. [emphasis in original] [quoting <u>Sullivan v. Zebley</u>, 493 U.S. at 531]. The determination at step three is strictly a medical determination. See <u>Cockerham v. Sullivan</u>, 895 F.2d 492 (8th Cir. 1990).

At step two, the ALJ found that Welch's severe impairments include "chronic lower back pain" and "chronic left shoulder pain." See Transcript at 16. In proceeding to step three, the ALJ noted his obligations to consider Welch's impairments both individually and in combination and to determine whether they meet or equal a listed impairment. The ALJ then considered whether Welch's lower back problem met or equaled Listing 1.04, <u>i.e.</u>, disorders of the spine, and whether his left shoulder problem met or equaled Listing 1.02, <u>i.e.</u>, major dysfunction of a joint(s). With regard to those questions, the ALJ found as follows:

> Listing 1.02 (major dysfunction of a joint) is not met or equaled because there is no medical evidence of chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings of appropriate medically acceptable imagining of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) resulting in an inability to ambulate effectively, as defined in 1.00B2.
>
> Listing 1.04 is not met because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A. Evidence of nerve root compression characterized by neuron-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, positive straight-leg raising or; B. Spinal arachnoiditis or; C. Lumbar spinal stenosis resulting in pseudoclaudication.

See Transcript at 19.

Substantial evidence on the record as a whole supports the ALJ's findings at step three. As the Court has noted, the determination at step three is strictly a medical determination. Welch has failed, however, to offer any medical evidence that his lower back problem, when considered individually or in combination with his other impairments, meets or equals all of the specified medical criteria of Listing 1.04 nor has he presented medical findings equal in severity to all of the criteria for Listings 1.04. Clearly, he has a history of back problems as he visited both the Open Hands Clinic and the University of Arkansas for Medical Sciences complaining of back pain. See Transcript at 214-220, 234-238. There is nothing in those medical records, nor in any other medical record, to suggest that his lower back problem pain meets or equals all of the criteria of Listing 1.04.

Welch has also failed to offer any medical evidence whatsoever that his left shoulder problem, when considered individually or in combination with his other impairments, meets or equals all of the specified medical criteria of Listing 1.02 nor has he presented medical findings equal in severity to all of the criteria for Listings 1.02. There is very little medical evidence to support such a problem, see Transcript at 174-180; what evidence there is does not support the proposition that his problem meets or equals all of the criteria of Listing 1.02.

WELCH'S SUBJECTIVE COMPLAINTS OF PAIN. Welch next maintains that his subjective complaints of pain were not properly considered. He maintains that the ALJ did not adequately evaluate the medical evidence, specifically, that the ALJ did not explain why the medical evidence discredits or is otherwise inconsistent with Welch's allegations of disabling pain. Welch additionally maintains that he experiences considerable pain in his lower back and left shoulder and the ALJ did not adequately consider the effect of that pain.

In evaluating a claimant's subjective complaints of pain, the ALJ is obligated to consider the following:

> … in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; [the] duration, frequency and intensity of pain; [the] dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id. at 1322. … The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. …

See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). The ALJ need not explicitly discuss each Polaski v. Heckler factor but "only need acknowledge and consider those factors before discounting a claimant's subjective complaints." See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

The ALJ considered Welch's subjective complaints of pain in accordance with Polaski v. Heckler. See Transcript at 21-22. In doing so, the ALJ considered both the medical evidence and non-medical evidence. With regard to the former, he considered the medical evidence touching on Welch's mental impairment, i.e., his psychosis, and the medical evidence touching on his physical impairments, i.e., his lower back and left shoulder problems, and his hypertension. The ALJ also considered the impact of Welch's alcohol problem on the aforementioned impairments. In addition, the ALJ considered the non-medical evidence. In sum, he found that although Welch experiences some pain, he does not experience pain to the degree he alleges.

Substantial evidence on the record as a whole supports the ALJ's treatment of Welch's subjective complaints of pain. Contrary to Welch's assertion, the ALJ adequately evaluated the medical evidence, specifically evaluating the following medical evidence:

    1) the findings contained in the medical records from the Arkansas Department of Correction ("ADC"), findings credited by the ALJ in which a physician diagnosed Welch with hypertension and imposed certain work-related restrictions, see Transcript at 16, 18, 23-24, 136-167;

     2) the findings of Dr. Joseph Patterson ("Patterson"), findings credited by the ALJ in which Patterson diagnosed Welch with a chronic lower back problem, a left arm problem, and auditory hallucinations, see Transcript at 16, 174-180;

     3) the findings of a nurse practitioner at the Open Hands Clinic, who diagnosed Welch with a chronic back problem and hypertension but whose findings were disregard because "a nurse practitioner is not an acceptable medical source under the Regulations," see Transcript at 17, 214-220;

     4) the findings of Little, who believed Welch to be malingering but nevertheless opined that he had a possible anti-social personality disorder, see Transcript at 17, 20, 23, 169-172; and

     5) the findings of Strode, findings largely credited by the ALJ in which Welch diagnosed Welch with a psychosis disorder and/or auditory hallucinations and believed alcohol abuse significantly contributed to his problems, see Transcript at 17-18, 23, 222-232.

The aforementioned medical records do not support Welch's allegation of disabling pain. The findings of Little and Strode go more to Welch's mental health, and the findings contained in his ADC medical records and the findings made by Patterson do not offer medical support for Welch's alleged disabling pain.

The ALJ also considered the non-medical evidence. First, he considered Welch's daily activities. See Transcript at 17, 20, 22-23. The ALJ could and did rely, in part, upon Welch's representation in a disability report that he has no difficulty attending to his personal care, see Transcript at 101, and his representation during an mental evaluation that he is able to perform the basic activities of daily living, see Transcript at 170.

Second, the ALJ considered the duration, frequency and intensity of Welch's pain. See Transcript at 22-24. The ALJ could and did rely, in part, upon representations Welch made in November of 2006 that he was not experiencing swollen or painful joints; bone, joint, or other deformities; or recurrent back pain. See Transcript at 144. It is true that he later reported problems akin to the ones he denied having in November of 2006, but the ALJ could and did find that the inconsistencies undermine Welch's credibility.

Third, the ALJ considered the dosage, effectiveness, and side-effects of Welch's medication. See Transcript at 22-23. His hypertension can be controlled by medication, see Transcript at 166, and he reported some improvement in his psychotic and mood symptoms with Risperdal, see Transcript at 225. Although his medication can cause severe side-effects, see Document 16 at 8-9, and he experiences some side-effects, see Transcript at 223, the side-effects he actually experiences are minimal.

Fourth, the ALJ considered an aggravating factor, namely, Welch's problems with alcohol. See Transcript at 17-18. The ALJ could and did rely, in part, upon Strode's notation that Welch's drinking may aggravate his problems. See Transcript at 225, 232.

Last, the ALJ considered other factors. He considered inconsistent representations made by Welch as to his literacy. See Transcript at 22-23. Welch testified during the hearing that he cannot read. See Transcript at 38. He represented in a disability report, though, that he can follow written instructions "real well." See Transcript at 105.

The ALJ also considered the infrequency with which Welch sought medical treatment. See Transcript at 22. The record supports the ALJ's finding that there have been "significant periods of time since the alleged onset date during which [Welch] has not sought medical care." See Transcript at 22.

The ALJ is charged with the obligation of assessing credibility, and Welch has offered no legitimate reason for questioning the ALJ's assessment. The characterization of the evidence made by him in light of the Polaski v. Heckler factors is one of the acceptable characterizations. Thus, there is no error.

WELCH'S MENTAL AND EMOTIONAL IMPAIRMENTS. Welch last maintains that his mental and emotional impairments were not properly considered. He specifically maintains that his auditory hallucinations and global assessment of functioning ("GAF") score were not properly considered.

The ALJ is obligated to consider all of a claimant's impairments. See 20 C.F.R. 416.945(e). The obligation includes the requirement that even a claimant's non-severe impairments must be considered.

The ALJ considered Welch's mental and emotional impairments at steps two and three and in assessing his residual functional capacity. The ALJ found at step two that Welch's severe impairments include psychosis, see Transcript at 16, but it does not meet or equal a listed impairment at step three, see Transcript at 19-20. The ALJ considered Welch's auditory hallucinations at step two but found that they are not severe. See Transcript at 17, 19. The ALJ considered both Welch's psychosis and his auditory hallucinations in assessing his residual functional capacity and found that they limit what he can do. See Transcript at 21, 23.[4] With regard to Welch's GAF score, the ALJ found the following:

> Dr. Strode gave the claimant a global assessment of functioning score of 50 indicating moderate to serious impairment in social and occupational functioning. However, the undersigned finds that the claimant does not appear to have significant adaptive functioning limitations. Mr. Welch has reported that he is capable of performing every day activities and he interacts on a regular basis with family members. Mr. Welch also reported that he could pay attention for a long period of time and could follow written and spoke[n] instructions well. This level of activity is inconsistent with Dr. Strode's assessed global assessment of functioning score and the undersigned finds that the claimant is functioning at a higher level.

See Transcript at 23.

---

[4] The ALJ found that Welch is limited to "performing unskilled work which is defined as simple work in a low stress environment, where interpersonal contact is incidental to the work performed, and the complexity of one to two step tasks is learned and performed by rote, with few variables and little judgment." See Transcript at 21.

Substantial evidence on the record as a whole supports the ALJ's treatment of Welch's mental and emotional limitations. They were clearly considered by the ALJ, and his findings as to their severity and impact on Welch's residual functional capacity have support in the record. Welch undoubtedly suffers from a psychosis, but Little, and to a lesser degree Strode, questioned its severity, and the ALJ could and did rely upon their findings. With regard to Welch's GAF score, the ALJ could and did question its accuracy as Welch has "no restrictions in day to day adaptive functioning from a mental health standpoint," see Transcript at 172; is able to perform the basic activities of daily living, see Transcript at 170; interacts with others on a daily basis, see Transcript at 104; can pay attention for "a long time," see Transcript at 105; and can follow written instructions "real well," see Transcript at 105. Thus, the ALJ did not err.

CONCLUSION. There is substantial evidence on the record as a whole to support the ALJ's findings. Jobs exist in significant numbers in the national economy that Welch can perform, and he has not been under a disability as defined by the Act since the day he filed his application. Accordingly, his complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___22___ day of September, 2011.

_____
UNITED STATES MAGISTRATE JUDGE